TWO HUNDRED AND FIFTY-SIX BARRELS OF BEER (UNITED STATES v.). See Case No. 16,579.

---

## Case No. 14,293.

TWO HUNDRED AND FIFTY BARRELS OF MOLASSES v. UNITED STATES.

[Chase, 502;[1] 11 Int. Rev. Rec. 92; 3 Am. Law T. Rep. U. S. Cts. 21.]

District and Circuit Courts, D. South Carolina. June Term, 1869.

FORFEITURE—CUSTOMS—SMUGGLING—ADMIRALTY JURISDICTION—APPEAL—TRIAL.

1. In a libel to decree goods forfeited by reason of a fraud on the revenue laws, admiralty has jurisdiction although part of the goods have been landed before the seizure.

2. But if admiralty had no jurisdiction, this must be pleaded, and the objection could not be made otherwise.

3. Under the act of March 3, 1863 [12 Stat. 737], if it be attempted to practice fraud upon the revenue in regard to only a portion of the cargo imported, the whole of the cargo belonging to the party attempting to commit the fraud is forfeited.

4. On an appeal from the district judge in an admiralty cause to the circuit court, the trial in the circuit court is de novo; and the opinion of the district judge can not be read.

The case is so fully stated and discussed by the district judge that his opinion is given in full.

BRYAN, District Judge. The facts of this case are as follows: Some time in July, 1866, the schooner Aid came to Charleston from Matanzas, with a part of her cargo included in one invoice consigned to Salas & Co. The invoice was produced by one C. P. Madan at Matanzas, who represented himself as the purchaser of the goods and swore to the correctness of the invoice required under the act of 1863 (2 Brightly's U. S. Dig. p. 177, § 78; 12 Stat. 737). On the arrival of the vessel, T. P. Salas, as consignee, presented the invoice at the custom house, and obtained an order for the entry of the goods; a part of these goods included in the invoice were landed and placed on drays and were removed to the store of Salas & Co. Suspicion having been excited, an examination of the goods took place, which resulted in the discovery that seven packages—viz., three hhds. marked in the invoice as containing sugar, contained boxes of cigars packed in the sugar, and four hhds. marked as containing sugar, contained each a quarter cask of brandy, packed in the sugar, and that out of thirty kegs marked California wine in the invoice, four kegs were found to contain rum. Upon the first suspicion of fraud, the collector revoked his entry, and ordered the goods on board ship as well as those which had already been landed to be seized. This was done, and the goods seized on board the vessel, and those, together with all the goods contained in the invoice, were taken possession of by the collector, and held under seizure by him. The libel was filed seeking to forfeit the whole of the goods contained in the invoice, on the ground that the invoice itself was false, and had been made up with intent to defraud the revenue, and all the goods contained therein and intended to be thereby entered, were therefore forfeited. In this libel Salas & Co. intervened as consignees, and claimed all the goods which were not falsely packed, except twenty bags of coffee, as belonging to six or seven different shippers in Matanzas and Havana, and at their instance the goods were appraised, and they deposited in the registry of the court eighteen thousand eight hundred and twenty-one dollars and seventy-two cents, and took possession as agents of the alleged owners of the goods which were correctly stated in the invoice, except the twenty bags of coffee, which were claimed by one A. J. Gonzales of Charleston, and the said A. J. Gonzales, having executed the usual bond, received the twenty bags of coffee. (The false packages not having been claimed, were condemned and sold.) Subsequently six or seven claims by different persons as owners were put in, covering every portion of the invoice, excepting the false packages and the coffee,

[1] [Reported by Bradley T. Johnson, Esq., and here reprinted by permission.]

and claiming the goods as their property. A great deal of testimony was adduced to show that the ownership of the property was in the six or seven claimants, and that the false packages were shipped through mistake by Da Costa & Madan, the shippers in Matanzas; but Da Costa & Madan were examined by commission, and their answers established the fact that none of the parties claimants before the court, except Gonzales, were owners, or interested in any of the goods now sought to be forfeited, but, on the contrary, that F. P. Salas was the person who superintended the packing and shipment, he being at Matanzas at the time, and the name of Da Costa & Madan only used to clear the goods at the custom house in Matanzas. One of these commissions was adopted by the claimants and used as their testimony, and by it it was very clearly shown that none of the parties claimants before the court, except Gonzales in the coffee, were either owners or at all interested in the goods. No plea to the jurisdiction was filed, and the case was submitted upon the libel and answer and the testimony.

On the part of the claimants it was contended—First. That the court of admiralty had not jurisdiction, inasmuch as the goods were partly landed before the seizure. Second. That the libel was defective. Third. That under a proper construction of the act, only the articles falsely invoiced were forfeited, and not all the contents of the invoice.

On the part of United States it was claimed, that the whole of the goods mentioned in the invoice were forfeited; and it was insisted, first, that according to the case made by the pleadings and the proof, the goods were derelict, and introduced into the United States without an owner, as it was shown that Madan, who, by his oath on the invoice, claimed to have been the purchaser, was not the owner. That Salas & Co. by their claim expressly denied the ownership, and stated that they were but the consignees or agents of the seven claimants, and that the testimony adduced and introduced by these claimants themselves proved conclusively that they were not the owners, and never had been interested in the cargo, and that the whole matter was an attempt to defraud the revenue either by F. P. Salas or by Salas & Co., and that the goods thus being without an owner, were rightfully seized by the collector, and the money deposited by Salas & Co., who had received the goods, was forfeited, as was also the bond given by Gonzales.

The act of March 3, 1863, § 1 (12 Stat. 737), under which this libel is filed, provides that no goods, wares, or merchandise imported into the United States after July 1, 1863, shall be admitted to an entry, unless the invoice presented shall in all respects conform to the requirements thereinbefore mentioned, and shall have thereon the certificate of the consul, vice-consul, or commercial agent of the United States, nor unless said invoice be verified at the time of making such entry by the oath or affirmation of the owner or consignee, or the duly and authorized agent of the owner or consignee thereof; certifying that the said invoice and the declaration thereon are in all respects true, and were made by the person by whom the same purports to have been made, nor, except as thereinafter provided, unless the triplicate transmitted by said consul, vice-consul, or commercial agent to the collector, shall have been received by him. The act requires that the invoice of goods to be imported, shall be made in triplicate and signed by the persons or person owning or shipping said goods, wares, &c., if the same shall have been actually purchased, &c., and requires that such invoices, at or before the shipment thereof, be produced to the consul, vice-consul, or commercial agent of the United States nearest the place of shipment, and shall have indorsed thereon a declaration signed by the purchaser, manufacturer, or agent, setting forth that said invoice is in all respects true; that it contains the true and full actual cost thereof, and of all charges thereon, &c. The act further declares, "And if any such owner, consignee, or agent of any goods, wares, and merchandise, shall knowingly make or attempt to make an entry thereof, by means of any false invoice, or false certificate of a consul, vice-consul, or commercial agent, or of any invoice which shall not contain a true statement of all the particulars hereinbefore required, or by means of any other false or fraudulent document or paper, or of any other false or fraudulent practice or appliance whatsoever, said goods, wares, and merchandise, or their value, shall be forfeited and disposed of, as other forfeitures for violations of the revenue laws." It is upon this last clause the present libel is founded. The first question raised by the defense in the argument, was as to the jurisdiction of the admiralty court, no plea to the jurisdiction having been filed.

The judiciary act of September 24, 1789, c. 20, § 9 (1 Stat. 73), enacts that the district court shall have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation, or trade of the United States, where the seizures are made on waters which are navigable from the sea by vessels of ten or more tons burden, within their respective districts, as well as upon the high seas. The libel expressly states that seizure was upon the water, navigable, &c. To this allegation, no plea denying the fact appears, but the objection is taken in the argument that this court is ousted of its jurisdiction, because it appears that a portion of the goods were landed before the seizure was regularly made. Mr. Conkling in his "Treatise on the Original Jurisdiction and Practice of the Courts of the United States," at page 592 of the third edition, lays it down as a settled rule "that the fact or the place of seizure is not put in issue

by a general denial of the alleged forfeiture."

A claimant who wishes to avail himself of such an objection (to the jurisdiction) must therefore put in an answer in terms denying the allegation of the fact or the place of seizure, and he cites the case of The Abby [Case No. 14]. In that case Mr. Justice Story also placed his decision upon the further ground that a plea to the merits was an admission of the jurisdiction of the court, and he was also of opinion, that applying for and receiving the property on bond, was such an acknowledgment of jurisdiction as the claimant was not at liberty to controvert. If this be the true rule, the claimants in this case, having not only failed to plead to the jurisdiction, or to traverse the fact or place of seizure, but having applied to this court for the property in question, are certainly precluded (at this stage of the proceedings) from taking advantage of any want of jurisdiction.

But let us examine the facts and proofs as made out by the evidence, and we will find that the first seizure was regularly made upon the vessel and on the water. This was the first original and legal seizure; the subsequent collection and taking possession of the goods which had been landed, was but an incident properly following upon the original seizure made on the water. It is a well-established rule in all cases of concurrent jurisdiction that the court which first obtains and entertains jurisdiction over the same subject-matter, is entitled to go on and decide the whole case ([Smith v. M'Iver] 9 Wheat. [22 U. S.] 535); and in this case the first seizure having been made on water, of a part of the goods, under an order to seize all the goods mentioned in the invoice, the jurisdiction of the admiralty court was obtained, and it has the right therefore to go on and decide the whole case involving the subject-matter—which subject-matter is the forfeiture of the whole of the goods mentioned and contained, or entered by means of that single invoice. But it is objected that the admiralty and common-law sides of this court are of separate, and not concurrent jurisdiction, depending on the place of seizure as to which court shall entertain jurisdiction. This objection, in the present case, can not, it seems to me, have any effect. The object of the libel is to forfeit all the goods entered, or attempted to be entered by means of a single false invoice; a portion of the goods, it is true, were loaded before the fraud was discovered, but the seizure was actually first made of a portion on board the vessel; and the jurisdiction as to that portion is clearly in the court of admiralty; but the question whether the whole of the goods, &c., entered under the false invoice are, or are not forfeited, is necessarily involved in any decision which may be made, and if this be the question, how can the invoice be divided, whether tried in either or both sides of the court? The question involves the whole of the goods, and not a part, and necessarily, therefore, the court that first obtains the jurisdiction, must go on and decide the whole case; otherwise it might so happen that for the same act, which tainted the whole of the goods, a part might be condemned in one court, and a part released by another.

In contemplation of law (if our view be correct, the goods contained in the invoice are one inseparable—one indivisible entirety) it is to be regarded as if it were a chain, one portion of which, when seized, was on the vessel, and the other portion on land. Or, to take another illustration, a horse seized with his fore-feet on the land, and his hind-feet on the vessel. The material unity, the physical links creating one whole, may be wanting in this case, but as strong a legal unity exists as we have given in the illustrations of the horse or the chain. In these cases it must be admitted that a seizure on the land or the water would give jurisdiction of the whole subject-matter, the chain or the horse, as in this case, the invoice, or all the goods contained in the invoice. I am therefore forced to the conclusion that the first seizure having been made on shipboard, gave to the admiralty proper, the instance side of the court, the jurisdiction of the whole, inasmuch as the permit to land, and the entry of the whole of the goods, was obtained upon a single invoice, they could not be separate, and the subsequent taking possession of the goods which had been landed, was but a part of the single act of seizure upon the waters.

The libel is in the usual form; it sets forth the seizure and forfeiture, the reasons of such seizure, and prays process and condemnation. The cause of seizure and forfeiture are set out in the words of the act, and this I think sufficient. U. S. v. Two Hundred Chests of Tea, 9 Wheat. [22 U. S.] 430; [U S. v. One Hundred and Twelve Casks of Sugar] 8 Pet. [33 U. S.] 277; [Barlow v. U. S.] 7 Pet. [32 U. S.] 410.

The next question, and the main one in the case, is whether. under the act, all of the goods which were entered or attempted to be entered are forfeited, or only the false packages. This is a new question under the act, and now for the first time to be decided. The words of the act, after requiring an invoice which shall be true in every particular, enacts that no goods, wares, or merchandise imported into the United States, shall be admitted to an entry, unless the invoice presented shall in all respects conform to the requirements of the act—shall have the certificate of the consul thereon, &c., nor unless said invoice be verified at the time of making such entry by the oath or affirmation of the owner or consignee or their agent, certifying that the said invoice and the declaration thereon are in all respects true—then declares—"And if any owner, consignee, or agent of any goods, wares, and merchandise

shall knowingly make or attempt to make an entry thereof by means of any false invoice, false certificate, or of any invoice which shall not contain a true statement of all the particulars required, or by means of any other false or fraudulent paper, or by any other false or fraudulent practice or appliance, said goods, wares, and merchandise, or their value, shall be forfeited." [12 Stat. 738].

It would seem to me that the signification and reach of these words are very clear: no entry can be made except by a true and perfect invoice sought to be entered and passed through the custom house; the whole of the goods mentioned in the invoice, or not mentioned, are then admitted to entry by virtue of the invoice, and if the invoice be false in any particular, and the agent, owner, or consignee, shall knowingly use it to obtain the entry, the whole of the goods, the entry of which was thus obtained, is forfeited. An invoice, full and faithful in every particular, of all goods attempted to be passed through the custom house, is the means and test used by the country to protect its revenue, its officers, and honest dealing, and the sin of a false invoice infects all the goods embraced in it, or sought to be embraced by it, or under cover of it. It is the false invoice that is punished, and the forfeit extends to everything embraced within it, or identified with it in the transaction. No other measure of forfeiture is indicated, no other qualification.

The great object of the law is to enforce the collection of the revenue, secure fair dealing with the officers of the customs, and protect honest trade by the instrumentality of an invoice true in all particulars, as to all goods sought to be entered by it or by reason of it, and with this object in view, the invoice is one, the sin against it one, and the measure of forfeiture can only be one and coextensive with it. The fraud, whatever it be, covers the whole invoice. It is the plague-spot that infects and corrupts everything embraced in it, or not embraced in it, yet sought by reason of it and by a foul practice connected with it, to be clandestinely introduced without payment of the proper duty, into the country in fraud of the revenue, in contempt of the government and its officers, against public morals, and at the expense of all honest traders. Revenue laws are not penal in the sense that requires them to be construed with great strictness in favor of defendants. They are rather to be regarded as remedial in their character, and to prevent fraud, suppress public wrong, and promote the general good. They should so be construed as to carry out the intention of the legislature in passing them, and most effectually accomplish these objects. Taylor v. U. S., 3 How. [44 U. S.] 210; Cliquot's Champagne, 3 Wall. [70 U. S.] 145. The objects of the act in question are to compel fair dealing, and to suppress attempted frauds upon the revenue, and attempted deceits practiced on revenue officers, as well as prevent smuggling. The smuggler does not simply defraud the revenue; he also defrauds and injures every honest trader who has to compete with him in the market, and who would scorn, for treacherous and dishonest gain, to stain his conscience with a false oath or soil his hands with profit slimed and fouled with perjury.

The previous acts of congress seem to have been more strictly for the protection of the revenue. Section 67 of the act of March 2, 1799 (1 Stat. 77), authorizes packages to be opened, and forfeits all goods which do not answer to the invoice. Section 21 of the act of August 30, 1842 (5 Stat. 525), authorizes collectors to examine packages, one at least in every ten, and if any thing is found which was fraudulently in the package, the contents of the entire package are forfeited.

Thus stood the law up to the time of the passage of the act of 1863, now in question. The above acts seem not to have been sufficiently stringent and exacting to compel fair dealing, suppress frauds upon the revenue, and deceits upon officers, and the act was passed, and must be construed as cumulative and making an advance upon previous legislation, adding additional penalties, and providing ampler guards and restraints. It requires three invoices to be made under the sanction of an oath before the shipment of the goods, the certificate of the consul, &c., nearest the place of shipment, that such invoice has been produced to him, &c., and thereupon, that the person producing the same, shall receive one of said triplicates, to be used in making entry of the said goods, and upon the production of this invoice, verified by the oath of the owner, consignee, or agent, an entry could be made of all the goods covered by the invoice. This was all that was required,—surely an easy requirement,—and if the parties acted honestly and fairly, every opportunity and means were thus given and afforded to facilitate honest and fair dealings; but in case the owner, agent, or consignee should act dishonestly or unfairly, he was properly punished by losing the whole of the goods he thus entered by his false invoice or any false device.

In Cliquot's Champagne, 3 Wall. [70 U. S.] 144, under this very section and act, it is said: "The court has to consider whether the case has been made out, and the three following points having been determined, the case is made out under the act. First. Did the owner, agent, or consignee of the goods mentioned in the invoice furnished to the collector, make or attempt to make an entry of said goods. Second. Did the agent, consignee, or owner make use of a false invoice or use any other false or fraudulent document or practice, in making or attempting to make such entry? Third. Did the agent, owner or consignee know, at the time of making, or attempting to make said entry, that he was using a false invoice, or employing any false document or practice to

make such entry?" Apply these tests to the case before us: Salas & Co., who were certainly the consignees, if not the owners, made or attempted to make an entry of the whole of the goods mentioned in the invoice furnished to the collector. They presented and used a false invoice which is sworn to by Madan as the purchaser; the proof shows that F. P. Salas, one of the firm of Salas & Co., and he alone, either on his own account, or on account of his firm, was the purchaser, shipper, and packer of the invoice (except the twenty bags of coffee of Gonzales), and the invoice did not contain a true statement of the goods which were really entered or attempted to be entered under it. Salas & Co., through F. P. Salas, who put up and shipped the invoice, and who used it before the collector to make the entry, knew that the invoice so used was false in all the above particulars. This fixes the case, as far as the invoice is the invoice of any purchaser, manufacturer, or owner, or the "duly authorizer agent" of such purchaser, manufacturer, or agent.

The principle of the law, as we apprehend it, and as contended for by the claimants in this case, does not extend to the claim of Gonzales. He was not directly, as purchaser, manufacturer, or owner, the maker of the invoice, and it seems to the court that a fair interpretation of the whole evidence justifies the conclusion that Salas, the shipper, was not (in the language of the law) "his duly authorized agent." He was an intruder. He acted without the authority of Gonzales, and against his wishes and feelings. He would not have made him his agent. If he had confided in him and made him his agent, and Salas had abused his confidence, it would have been his misfortune, and he could not have escaped the penalty of the law, so far as this court could relieve him. His remedy would have been against his betrayer, or a resort to the equity of the government administrated by the secretary of the treasury.

With this exception the attempt here (as demonstrated by the evidence), was a most deliberate and skillfully contrived scheme to defraud the government of its revenue, in contempt of the officers of the customs, at the expense of all honest trade, and in shocking violation of commercial morals. And to add to the enormity of the offense, when the fraud was detected, it was sought to cover it up, by perjury so unblushing, elaborate, and multiplied as not often poisons the atmosphere of public justice. The case, in its entire character, vindicates the equity and policy of the act, and the forfeiture of the whole venture is only a part, and a very insufficient part, of the punishment that should be visited upon conduct so dishonest and criminal.

[It is therefore ordered, adjudged, and decreed that the said goods, wares, and merchandise (with the exception of the twenty bags of coffee, the property of Gonzales), mentioned and set forth in the libel filed in this case, represented by the money now in the registry of this court, their legal substitute, be forfeited. It is further ordered that the bond of A. J. Gonzales be discharged. It is further ordered that the money now in the court registry, as aforesaid, be retained subject to the orders of this court, in conformity to the provisions of the statutes of the United States in such case made and provided.] [2]

The cause, came on appeal to the circuit court, and was argued by Mr. Corbin, U. S. Dist. Atty., for the United States.

Porter & Conner, for claimants [with whom was A. G. Magrath]. 1. The libel alleges a seizure on waters navigable from the sea, &c. The testimony shows that nearly all the goods were seized after they were landed. The first question is as to jurisdiction of the court. It is the place of seizure which decides the jurisdiction. The Betsey, 4 Cranch [8 U. S.] 443; The Bolina [Case No. 1,608]. If seizure is on land, triable by jury; if on sea, by court. La Vengeance, 3 Dall. [3 U. S.] 297; The Sarah, 8 Wheat. [21 U. S.] 394. The two jurisdictions are as distinct as if vested in different tribunals. The Sarah [supra]. The libel charges seizure on navigable waters. Probata must correspond with allegata, and only so much can be condemned under these proceedings as is proved to have been seized on navigable waters. Conk. Prac. 515. It is for libellant to prove jurisdiction. The argument that objection should have been taken by plea in abatement hardly merits reply. It presupposes jurisdiction in a court of limited jurisdiction, and casts proof of negative on claimant. The case in 8 Wheat. shows the true rule. The moment it appears that seizure was on land, jurisdiction ceases.

2. As to the offense. The charge is, the attempt to make an entry by means of false invoice. Act 1863, § 1 (12 Stat. 737); 2 Brightly's U. S. Dig. tit. "Imposts," § 78. All the preceding portion of the section refers to what the invoice shall express. No allegation that this invoice does not conform to the act in all these respects. The whole charge is that seven packages included in the invoice were fraudulently packed. As to them, the invoice is false. We concede that these seven packages are justly forfeited, but we deny that the fraudulent character of these packages can affect the rest of the goods, wares, and merchandise included in the invoice. As to these latter, there is no attempt to enter them by means of a false invoice. The argument of district attorney is that no matter how regular and true may be all the rest of the invoice, and all of the goods included therein, they are nevertheless forfeited, because in bad company. He

[2] [From 11 Int. Rev. Rec. 92.]

extends the act by construction, and condemns all as fraudulent because a part is. If the false could not be separated from the true, the condemnation of both might be asked with some show of reason, but where they are distinct and separable, the blending of innocent and guilty in one general condemnation seems repugnant to common sense and common justice. Such conclusion ought to rest on express enactments, not upon construction. The words of the act do not forfeit all the goods included in the invoice. It says, "If any owner of any goods, wares, or merchandise, shall knowingly make an entry thereof by means of any false invoice, said goods, wares, and merchandise shall be forfeited." The object of the legislation was to insure that the goods entered on the invoice should be correctly described, and the fair and reasonable interpretation of the act is to forfeit the goods which are not correctly described on the invoice. The construction contended for by the district attorney, gives no protection to the government. All that a fraudulent shipper has to do is to place his fraudulently packed goods in separate invoice, and the government is limited in its forfeiture to the falsely packed goods. The construction contended for by the district attorney, would not defeat the guilty. It will only punish the innocent. The act of 1823 (1 Brightly's U. S. Dig. 366 [3 Stat. 329]) authorizes shipper to include all articles shipped by him in one invoice; shipper may include in same invoice goods of twenty different people, and the fraud of one will forfeit the property of all. The express companies transporting goods from Europe to New York, include in one invoice, we suppose, the goods of fifty different owners, each trip of the steamer: shall a falsely packed package forfeit the whole invoice? "A construction which would sanction so glaring an invasion of the law ought in no case to be adopted." American Fur Co. v. U. S., 2 Pet. [27 U. S.] 367. The court below felt the injustice of such construction, and in the present case exempted from forfeiture Gonzales' goods. Yet they were all included in the same invoice, entered by the same party, and seized in the same manner. But two constructions can be placed upon the act: one that it forfeits all the goods included in the invoice; the other that it forfeits only the fraudulent packages. The exemption of Gonzales' goods shows the judgment of the court that the forfeiture does not extend to the entire invoice. It must therefore attach only to the fraudulent packages. A reference to the language of preceding acts and the decisions under them will sustain the view we take. See act of 1799 (1 Brightly's U. S. Dig. p. 409, § 386). The goods, wares, and merchandise forfeited are the goods, wares, and merchandise invoiced below cost. U. S. v. Wood, 16 Pet. (41 U. S.) 342. Under act of 1799, § 67 (1 Brightly's U. S. Dig. p. 409, § 387 [1 Stat. 677]), if the packages shall be found to differ from the entry, "then the goods, wares, and merchandise contained in such packages shall be forfeited." Under act of 1830 (section 4), all that is forfeited is the package which does not correspond with the entry. 1 Brightly's U. S. Dig. p. 367, § 206 [4 Stat. 409, § 4]. See act of 1832 (1 Brightly's U. S. Dig. p. 413, § 405 [4 Stat. 593, § 14]). See act of 1842 (1 Brightly's U. S. Dig. p. 413, § 206 [5 Stat. 565, § 19]). See act of 1842 (Id. p. 413, § 407 [5 Stat. 565, § 21]). See act of 1799 (1 Brightly's U. S. Dig. p. 374, § 239 [1 Stat. 661, § 46]). When the acts intended to forfeit all that is connected with the fraud they say so, in unmistakable terms. "The whole contents, together with the envelope, shall be forfeited." Act of 1864, § 1 (2 Brightly's U. S. Dig. p. 183, § 106). "All invoices and packages whereof any such articles shall compose a part are hereby declared liable" to forfeiture. Act of 1857, § 1 (1 Brightly's U. S. Dig. 366, § 200 [11 Stat. 168]).

CHASE, Circuit Justice. This cause comes here on appeal from a decree of condemnation pronounced by the district court against certain merchandise, as forfeited to the United States, by reason of attempted fraud upon the revenue. The decree of condemnation is issued against the whole cargo of the British schooner, and mentioned in an invoice of goods consigned to Salas & Co., and imported into Charleston on July 2, 1866, from Matanzas, in the island of Cuba. The packages falsely entered upon the invoice were four hogsheads entered as containing sugar, each of which in fact contained a cask of brandy, or distilled spirits, packed in sugar; and three other hogsheads entered as sugar, each of which in fact contained a case of segars, packed in sugar; and four quarter casks entered as wine, each of which in fact contained rum or distilled spirits. There were twenty-five hogsheads entered as sugar in all, of which seven were unlawfully entered as first stated, and thirty quarter casks entered as wine, of which four were unlawfully entered. The rest of the hogsheads of sugar, the rest of the quarter casks of wine, and the whole remainder of the cargo, consisting of two hundred and fifty barrels and twenty-three tierces of molasses, one hundred and thirty-one barrels of sugar, and a large quantity of other goods, such as maccaroni, olive oil, sugar, syrup, and the wine, seem to have been truly entered upon the invoice. The whole invoice was consigned to Salas & Co., of Charleston. The evidence excludes all reasonable doubt that the goods, except twenty bags of coffee, were purchased by or for account of Salas & Co. in Cuba, either through Da Costa & Madan, or with funds furnished by that firm. The whole cargo was shipped by Da Costa & Madan, under the direction of F. P. Salas, and bills were drawn by them on Salas & Co. for the amount of it.

The claims put in by other persons are unsupported by the proofs. It is remarkable that Salas & Co. disclaim ownership, and claim only as consignees. As consignees, however, this firm, through one of its members, F. P. Salas, represented the invoice as true, made an entry of the goods by reason of it at the custom-house, Charleston, and obtained the usual permit to land part of the goods, for which he was prepared to pay the duties. A part of these goods were landed and conveyed to the house of Salas & Co. While the Aid was being discharged under the permit, it was discovered that a part of the goods were fraudulently entered in the invoice. The entry and permit were, therefore, revoked. and all the goods mentioned in the invoice, whether remaining on board the schooner, or landed, were seized, and the libel now before us was filed for condemnation. These two grounds are relied upon for the reversal of the decree of the district court: First. That the seizure of part of the goods was upon land, and that as to this portion, there is no jurisdiction in admiralty. Second. That the forfeiture contemplated by the statute is of the fraudulent packages only, and not of the whole invoice.

To the first objection, I think it is a sufficient answer that no objection to the jurisdiction is taken in the claim and answer of Salas & Co. But if the objection were not too late, it would be difficult to sustain it. The goods were in the act of being discharged. The discharge had not been completed; a large portion was still on board the vessel. The fraud was not discovered until a part had been landed. Under the circumstances, it is not unreasonable to regard that portion of the goods which had been put on shore as still a part of the cargo of the vessel, and the whole as subject to the jurisdiction of the admiralty.

The other objection must also be overruled. I shall not now enter into the history of the progressive severity with which congress has enforced, by forfeitures, the payment of duties on imported merchandise, first providing for the forfeiture of the particular articles imported in violation of law, afterwards by forfeiture of the package in which these articles were contained, and finally enacting the law of March ?, 1863. This last act provides that no goods, wares. or merchandise imported after July 1, 1863, shall be admitted to entry, unless on production of the required invoice, and compliance with the other terms prescribed, and that if any owner, consignee, or agent of any goods, wares, or merchandise shall attempt to make entry of them by false invoice, said goods shall be forfeited. What goods? The particular articles fraudulently imported? That will hardly be contended, for it would mitigate the already exising penalty: and the policy of congress, in view of the exigencies of the revenue, and of possible fraud, was to retain, not diminish, the former surety. Was it the packages in which the fraudulent articles were concealed? This construction would leave the former law, in this respect, unaltered, while it was the manifest purpose of congress to alter it, and augment the penalty. No construction will carry out this obvious design, except that which the words of the law manifestly suggested, and which made the penalty apply to the whole invoice owned or shipped by Salas. This construction condemns all the goods included in the invoice, except the twenty bags of coffee belonging to Gonzales. The decree of the district court will, therefore, be affirmed.